Good morning, Your Honor. It's Marilyn Marshall for Mr. Cervantes. Good morning. To please the Court, I'd like to save a couple of minutes for rebuttal. My position is that pinholster is not even relevant to the situation at hand. To hold otherwise would mean that the federal court, any federal court, could only grant a habeas based on ineffective assistance of counsel if they didn't hold a hearing. And a hearing is necessary to determine the truth of the allegations. This is surely not what the majority in pinholster had in mind. I'm going to try to explain my position. The determination of truth is something that has to occur before a writ can be granted. In California, I think everywhere, a summary denial, which is a denial on the merits, assumes that the facts that were alleged in the petition are true. Isn't that all that pinholster is saying, then? That assuming those facts, you look at 23d1, assuming those facts, and if you conclude that assuming those facts that decision was an unreasonable decision, then you go to the facts developed in the evidentiary hearing because then you're out from under 23d1. Well, you go to the — I think what pinholster was saying is you can't bring in new evidence that was not even put before the state court. I think that's really all they're saying, like experts in the pinholster case. In our case, we didn't have experts. We didn't parade new witnesses. All we did was elaborate. We tried to determine the truth of what we had alleged in our petition, which the California Supreme Court had not done because they just assumed it to be true in denying it. I mean, we assume that — they assume that everything in the petition is alleged is true, and then they say, is this sufficient to grant relief? No, it's not, so deny it. And that could mean that they found it was okay for counsel not to call those witnesses and or that if she had, it wouldn't have made any difference. But we don't really — you can't establish whether or not those witnesses would have testified in accordance with those statements in trial counsel's file unless you have a hearing. That's what our hearing was about, was to determine the truth of our allegations, and I don't think that's what pinholster went way beyond that. Of course, I can't argue it was wrongly decided. It's just not applicable here because we did not bring in new witnesses. We only dealt with what we had before the State court. And, you know, a panel of this court previously held that petition had overcome 2254D implicitly. Do you think that's what they held previously? They ordered a hearing pursuant to Williams, and I think in order to do that, they would have to have found that the State court decision was an unreasonable application of Strickland, and even under the double-deferential standard of the DEPA, that petition would have been titled to relief if what he said was true. And without finding out whether it was true — I mean, the witnesses could have come in and said, you know, I never said that, you know, or I said that and I lied. The attorney could have come in and said, you know, well, I interviewed them, and they seemed like, you know, total liars, and they had 20 felony convictions. But, you know, that didn't happen. So I think, you know, there are cases where the ineffective assistance is plain on the record, but in this kind of a case where you have witnesses that are untried that the California Supreme Court doesn't give you a hearing on, I can't see how we could say that the Federal court can't hold a hearing and consider the results. Now, I think even without the hearing that, you know, relief should have been granted on this case, because I just — it's a circumstantial evidence case, and there's nothing tying Petitioner to either of those events but the testimony of gang members, mostly testimony about admissions he's alleged to have made to them. And when you look at a case with evidence that close, you can't say that — I mean, the president of this court, like Luna, clearly states that just because it's somebody's mother doesn't mean that they shouldn't be allowed to come in and, you know, testify that their son was home and dead when he's supposed to be out shooting up the neighborhood. Well, doesn't — don't the recent Supreme Court cases give a defense counsel fairly broad discretion to decide when to call a witness and if there can be any possible reason that the court — I'm sure it was within its discretion to decide as a tactical matter not to call a witness. I think there could be a tactical reason, but I don't think that the court in a case with this kind of evidence could assume that there was a legitimate tactical reason, which it turns out there wasn't. I mean, she couldn't articulate any reason. We don't know why she didn't call them. Well, it's not that she didn't articulate a reason. She said she didn't remember why.  She did not remember why. But we know she — they did investigate. They had the information, at least with regard to the mother and sister. It's a pretty good assumption, at least with regard to those two, that something went through her head why she didn't put them on. I don't think we can assume that. I think this is a woman who I think did, you know, a number of murder trials, and whatever reason, you know, those witnesses, it might have just slipped her mind. There's also, you know, language problems with these witnesses. Well, the problem is it's not whether it slipped her mind or whether there's one possibility. It's whether there are two possibilities. And the Supreme Court says, well, as long as there's a possible explanation, you know, we — it may well be ineffective assistance. I mean, it may well not be. It may well be the lawyer's rational decision, right or wrong. Well, in that case, there could always be a possible reason, and therefore — Well, they're coming pretty close. Therefore, we never have any risk granted, no matter how heinous the situation. There was a funny dynamic here, which was that if she put the mother and sister on, she was throwing away one of the convictions. Now, it would seem that you would be willing to do that because one was a murder conviction and one wasn't. In other words, with regard to the shooting in the car, they didn't place him — they placed him away at the time of that shooting. So this testimony was only useful with regard to the party shooting, right? The party shooting was the one that was a block from the house when he was home in Bedware, which was a double homicide. The only connection between the party shooting and the bicycle shooting, that's what I refer to it as, is a bullet. There's no — I understand that, but still, he was being tried for the bicycle shooting, too, at the same trial. It's only an attempted murder, and I don't think that they — So you're saying she just should have made a decision to throw away the attempted murder. I don't think she should be throwing it away. I think that if he was not at the bicycle — at the party shooting, he was less likely to have been at the bicycle shooting because there was no connection. But didn't the sister and the mother have him away from the house during the time of the bicycle shooting? They couldn't account for exactly where he was exactly during that time because what time that happened was rather vague in terms of the record. I think it was probably around, you know, 7 o'clock, 8 o'clock, something like that because everybody apparently left. It depends on which gang member you believe. I mean, I don't really know what time the police arrived at the shooting, but it would appear that that was in the early evening, and he was in and out. But, I mean, an attempted murder, even if premeditated, is, you know, one life sentence. It's not — I mean, she could have made that decision, but, I mean, you can imagine, given that dynamic, that maybe he didn't want her to, or maybe she — I mean, it wasn't an easy problem because she had — it seems that she was more likely to place him possibly on the scene for the attempted murder if she put these people on. I don't see why that would be, Your Honor. I mean, he was potentially anywhere at any moment except the time he was home in bed. I mean, there was nothing that really placed him at the scene of the bicycle shooting. I see your position, but even so, that would hardly be reasonable, because he could be — he could have been anywhere about afternoon. I don't think she would have given up anything. Unless the Court has further questions, I'd like to save my one minute or maybe two seconds. We'll give you at least your two minutes. Thank you. May it please the Court, Supervising Deputy Attorney General Bill Bilder back on behalf of the Respondent. First, there's nothing in this Court's order remanding the matter to the District Court that intimates that this Court has passed upon the 2254d1 inquiry or even implied that Petitioner had met his burden of demonstrating that the state court decision was unreasonable. In fact, this Court's order remanding the matter to the District Court for an evidentiary hearing specifically and explicitly disclaimed that this Court was reaching the merits of Petitioner's claims. On the more substantive question, we don't have to assume anything about trial counsel's actions in this case because there's an operative presumption that the law instructs that we have to observe in this case. And the presumption is that trial counsel acted as a reasonably diligent advocate under prevailing professional norms. And unless and until Petitioner alleges facts which, if true, would overcome that presumption, the claim must be rejected. And in this case, if one confines the examination to the state court record, as Penholster instructs, we must, there is nothing in the state court record that even begins to attempt to explain why trial counsel made the decision she made regarding the presentation of these witnesses. And as Judge Berzon's questions to my friend indicated, there are rational tactical reasons why trial counsel may have refrained from presenting those alibi witnesses. For example, as noted, the alibi witnesses provide no alibi whatsoever for the severe shooting, the shooting of the gentleman on the bicycle. They don't help on one count? Well, not only do they not help on one count, but that has a domino effect on the other count because by, not only do the mother and the sister provide no alibi during the time of the severe shooting, but the other alibi witness that was presented to the state court, Jose Hernandez, specifically says, I was with Petitioner that evening. He was not, not, so there's, you can explain them not calling Hernandez on that basis? Yes. What does that have to do with the mother and sister? Well, again, they provide no alibi whatsoever for the severe shooting. Well, I don't understand the, for the bicycle shooting? That's correct, Your Honor. Okay, so if a witness only exonerates you on one out of two charges, you don't present the witness because he doesn't exonerate you on both? Depending upon the circumstances you find yourself in, that might be precisely correct, Your Honor. For example, in this case, by failing to provide any evidence whatsoever that would have been useful on the severe count, A, you expose your client to greater risk of conviction on the severe count. Also, by, that's hard for me to understand. If you provide no witnesses on either count, you're better off than if you provide witnesses on one count. Because in this case, the severe counts and the shooting at the Juarez house were linked together by the bullet casings which came from the same gun. So to the extent that you offer a defense which provides no defense whatsoever to a count which is forensically linked to the other shooting. Yes, but the problem is that she still did that. She didn't provide any defense to the severe count and she didn't provide any defense to the other count. Well, I wouldn't agree with that entirely, Your Honor, because her defense was to attack the gang witnesses as being unreliable reporters of Petitioner's presence altogether. And the quality of the evidence was essentially the same regarding the severe shooting and the shootings at the Juarez house. You began to tell Judge Reinhart why the Hernandez evidence wasn't helpful, but you never finished, so could you tell me? Yes, because Hernandez specifically says, I was with Petitioner that evening and he left for a period of time. And the period of time during which. Well, the mother and the sister said the same thing, right? Well, the mother and the sister, to be clear, the mother and the sister didn't get home until later in the evening. And so what the mother and the sister were saying is we got home at around 11 o'clock and then from that time forward until we went to bed we can account for. I thought they both said he went to see his girlfriend or something. That's Hernandez, Your Honor. Hernandez is the one who says I was with him earlier in the evening and then he left. And the period of time during which Petitioner was gone from Hernandez was the same period of time where Seville was shot. But as to the other offense. Yes. With regard to the 23-D1 and assuming that we're only looking at what was before the court at the time of it decided. Yes. Hernandez said, and Hernandez doesn't have the mother and sister problems, whatever they are, maybe. He's not a relative anyway. And he said Rubin never left the house and there were no visitors or phone calls until the following morning. So how can someone, how can the State court reasonably think that a reasonable lawyer would not have put that on? Well, again, there are several possibilities that occur. And as Judge Reinhart pointed out, the question is whether or not there is any reasonable basis upon which trial counsel might make that decision. And for example, and nothing in the record that I've seen precludes this possibility, it's entirely possible that Petitioner confessed his involvement in the crimes to his client. That would, I mean, to his attorney. That would, of course, greatly limit the attorney's ability to put forth evidence, affirmative evidence that he was elsewhere, as opposed to the strategy that was employed, which was to simply try to throw doubt on the quality of the prosecution evidence. It's also possible that the attorney went and met with Hernandez and found him to be lacking in credibility. If your entire ---- I don't surmise that he met with Hernandez. Again, but if you look at the Hernandez declaration ---- You didn't say it and Mackey didn't say it. So how could you surmise that they met with Hernandez? I don't surmise anything, Your Honor. Again, it is their burden to disprove any rational basis for trial counsel's actions. But as to facts about what actually happened, there's nothing in either of the records, whichever you look at it, that anybody ever spoke to Hernandez. Oh, and I'm not arguing that that actually happened, Your Honor. But there is nothing that precludes that possibility. And that's where the presumption comes in. The presumption is ---- At the hearing, the evidentiary hearing, there was something that precluded it. Mackey's records were there, and he didn't talk to Hernandez. Well, again, but we have to confine ourselves under 2254d1 to the evidence that was before the State court. And the evidence before the State court was the Hernandez declaration. And the Hernandez declaration simply says, here's what I saw that day, and I was never asked to testify. Did the petition itself not say that it didn't speak to Hernandez? The petition does. But the petition did not do it in a way that would call upon the California Supreme Court to assume the truth of that specific factual allegation. Why? Because the California Supreme Court only assumes the truth of factual allegations that are supported by the record that's provided by the petitioner. I could have verified petition is presumed true. Well, not to belabor the point too greatly, Your Honor, but this petition was never verified, the one presented to the State court. All right. Nor would it have been appropriate for a petitioner to verify that fact. A person can only, of course, verify matters that they know of their own knowledge. And particularly here, where we have a declaration from Hernandez, but the Hernandez declaration never says, nobody from the defense camp ever contacted me. It would be inappropriate for this Court to assume, and it would have been inappropriate for the California court to assume the truth of that allegation. The question is whether the supported factual allegations that are contained in the petition support the claim for relief. And here there was no support for that allegation. So, no, we cannot assume that fact to be true. But, again, I don't want to be understood as suggesting that that is in fact what happened. We don't know what happened. And that is the failure on the part of the pleading provided to the California Supreme Court by Petitioner. He decides what to put in his petition, and to the extent that that petition is deficient in some way, as it is in this case, then it cannot be concluded that the California Supreme Court's decision rejecting the claim was unreasonable. And we're all we're fortunate in this case also because, although the district court employed a now overruled standard of review in the Second Amendment, in report and recommendation and judgment, they employed the appropriate standard of review in the first report and recommendation and judgment prior to this court's order remanding for an evidentiary hearing. So we are not left as we might otherwise be with the situation where we don't know how the district court might have ruled had they employed the appropriate standard. We have their judgment. And so it would be a respondent's position that this court should simply affirm, although affirm, of course, based upon the appropriate standard of review as reflected in the first report and recommendation. Unless the Court has further questions. Thank you. First of all, as my friend well knows, the petition is verified on page 20. And it's standard practice in the California courts for counsel to verify the petitions. My client would have no way of knowing what was in his trial counsel's file. I did. So I verified the petition. Also, California Supreme Court authority, Duval, which is the seminal authority on how you do your petitions, you attach reasonably available documentary evidence and exhibits. You don't necessarily have to. You can make allegations and you can ask for an evidentiary hearing and the way you can further develop the evidence. There are some things you can only do, especially in a case like this where I had only a month between being retained on the case or agreeing to do the case would be a better example, and getting and actually getting it filed. So in the petition, it said that Hernandez was never interviewed. Yes, it does. And it's your position that under California law that was sufficient, although not verified? Well, I verified it. Verified by the – well, usually verified means verified by the petitioner. Well, we don't – we never do it that way because they're in prisons in a different county, and they don't – they aren't really in a position to know the truth of the petition the way that we are. I mean, unless you're – I'm alleging that my clients didn't do it, which would – you would never do that. But Fernandez's declaration, his declaration on the penalty of perjury in California, isn't that the same as a verified petition? Well, his – his exhibit, yeah. What we say in the verification is yes. The answer is yes, the short answer. But we say in our petition that the petition is based upon the exhibits, the records of the court, the exhibits attached here, too. But the exhibit doesn't say that he was never interviewed. It says he wasn't put on trial, but it doesn't say he was never interviewed. I think it says no one ever contacted him. It doesn't say that. It says I would have testified if they asked me to fit an estimate. During Robbins-Cervantes' trial, I was available when you testified, but was not asked to. Yes, it does. It does not say that no one talked to him. That's correct. However, at the evidentiary hearing, it was developed. I mean, if it's the Court's position that, you know, they can't consider anything that was said at the evidentiary hearing that was held in the district court,  They can't say that no one talked to him. Then, you know, we're in a different position. I don't think that Penholzer precludes us looking at that hearing because it wasn't like new witnesses. It was the same witnesses just elaborated upon as they didn't get the opportunity to do in state court.
judges: Panner, Reinhardt, Berzon